Filed 9/11/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JERRY R. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMINITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.R. et al., <br><br> Defendants and Appellants. | F085850 <br><br> (Super. Ct. Nos. 517400, 517401 & JVDP-21-000064) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant A.R.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant S.R.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A.R. (Father) and S.R. (Mother) appeal from the juvenile court's orders terminating their parental rights to three of their children, 10–year–old Joe R., nine–year–old Gabriel R., and two–year–old Jerry R., under Welfare and Institutions Code section 366.26.[1]  Father's sole claim, joined by Mother,[2] is that because Stanislaus County Community Services Agency (agency) failed to conduct a proper, adequate, and duly diligent inquiry into whether the children are or may be Indian children, in compliance with California law (§ 224.2, subd. (b); rule 5.481), the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[3] did not apply, necessitating remand.

Relying on the recent decisions in *Robert F.* and *Ja.O.* from the Court of Appeal, Fourth District, Division Two, the agency contends that the broad duty of inquiry under section 224.2, subdivision (b), does not apply in cases where, as here, children are taken into protective custody by warrant under section 340, subdivision (a) or (b).  (*In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743; accord, *In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*), review granted July 26, 2023, S280572.)  After briefing was complete, a different panel of the same court reached a contrary conclusion in *Delila D.*, with one justice dissenting.  (*In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*).)  We provided the parties with the opportunity to file supplemental letter briefs addressing *Delila D.*, as well as rules 5.480 through 5.482. (Gov. Code, § 68081.)

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    California Rules of Court, rule 8.200(a)(5).  All further references to rules are to the California Rules of Court.

[3]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

Section 224.2, subdivision (b), imposes on the county welfare department a broad duty to inquire whether a child placed into the temporary custody of the county under section 306 is or may be an Indian child.[4]  This appeal requires us to determine, as a matter of first impression, whether a child taken into protective custody by warrant under section 340, subdivision (a) or (b), falls within the ambit of section 306, subdivision (a)(1).[5]  Based on the plain language of the statutes, and consistent with the statutory schemes governing dependency and ICWA, we agree with *Delila D.* that the answer is yes and, therefore, the inquiry mandated under section 224.2, subdivision (b), applies in this case.  (*Delila D., supra*, 93 Cal.App.5th at p. 976.)  Discussed below, we find the contrary conclusion reached in *Robert F.* and *Ja.O.* unpersuasive.[6]  (*Robert F.,*

---

[4]     Section 224.2, subdivision (b), also imposes a duty of inquiry on the county probation department if a child is placed into the temporary custody of the county under section 307. Section 307 is not relevant to the issue raised in this appeal and we confine our discussion to section 306.

[5]     The agency suggests *Robert F.* diverged from our decision in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*), "which assumed, if not held, that § 224.2[, subdivision ](b) required a comprehensive initial inquiry into possible Indian heritage with all available extended family members in every case …."  It is well established that "'a decision is not authority for propositions not considered'" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 285), and the analysis adopted by *Robert F.* was set forth in the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353–374 (conc. opn. of Kelley, J.) (*Adrian L.*), which postdated our decisions in *K.H.* and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*).  Nevertheless, we take judicial notice of the records on appeal in *K.H.* and *E.C.* for the limited purpose of clarifying that neither case involved placement of the child in protective custody by warrant under section 340. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[6]     Although not yet final (rule 8.264(b)(1)), the Fourth District, Division Two, recently issued another decision addressing its split of authority on this issue.  (*In re Andres R.* (Aug. 23, 2023, E079972) __ Cal.App.5th __ [2023 Cal.App. Lexis 638].)  The majority opinion, authored by Justice Menetrez, follows, and elaborates upon, *Robert F.* and *Ja.O.*, both of which were also authored by Justice Menetrez. (*Andres R., supra*, at pp. __ [2023 Cal.App. Lexis 638, *10–48].)  In a separate opinion, Justice Slough, who authored *Delila D.*, concurs in the affirmance of the juvenile court's jurisdictional finding and removal order and would not reverse the ICWA finding because the case is ongoing. (*Andres R., supra*, at pp. __ [2023 Cal.App. Lexis 638, *48–49,  57–58] ( conc. opn. of Slough, J.).)  However, Justice Slough writes separately to express disagreement with the majority's interpretation of the initial duty of inquiry under section 224.2, subdivisions (a) and (b), and would direct the department to discharge its duty of

*supra*, 90 Cal.App.5th at p. 500, review granted; *Ja.O., supra*, 91 Cal.App.5th at pp. 679–680, review granted.)

In accordance with our decisions in *K.H.* and *E.C.*, we further conclude that the juvenile court erred in finding the agency conducted a proper, adequate, and duly diligent inquiry, and that the error is prejudicial, which necessitates a conditional reversal of the court's finding that ICWA does not apply and a limited remand so that an inquiry that comports with section 224.2, subdivision (b), may be conducted. (*K.H., supra*, 84 Cal.App.5th at p. 621; *E.C., supra*, 85 Cal.App.5th at p. 157.)

## PROCEDURAL HISTORY[7]

Father and Mother are married and in an intact relationship. Prior to the initiation of this dependency case, they had a child welfare history of one voluntary family maintenance case from 2014, which was closed at their request in 2015, and two dependency cases from 2015 and 2019, which were closed in 2017 and 2020, respectively, following reunification with their children. In March 2021, Father and Mother were living with their seven children, Joe, Gabriel, Jerry, Am. R., Ang. R., E.R., and Z.R.[8]

---

inquiry. (*Andres R., supra*, at pp. __ [2023 Cal.App. Lexis 638, *57–58] (conc. opn. of Slough, J.).)

More recently, in *In re V.C.*, the First District, Division Two, agreed with the second conclusion reached in *Delila D.*, and held "that the duty to make ICWA inquiry of 'extended family members' applies *even if the children here were not taken into 'temporary custody' pursuant to section 306.*" (*In re V.C.* (Sept. 6, 2023, A166527) __ Cal.App.5th __, __ [2023 Cal.App. Lexis 687, p. *12], italics added, citing *Delila D., supra*, 93 Cal.App.5th at pp. 974–975.) As discussed herein, we agree with *Delila D.*'s first conclusion that children taken into protective custody under section 340, subdivision (a) or (b), fall within the purview of section 306, subdivision (a)(1). Therefore, we need not consider the second, and alternate, ground articulated in *Delila D.* and we express no view on it.

[7] The sole issue on appeal is Father's and Mother's ICWA claim. Therefore, we include only a limited factual summary.

[8] Father also has an older son, An.R., from a prior relationship, and in May 2022, Mother gave birth to her and Father's eighth child, R.R., who is subject to a separate dependency proceeding. This appeal concerns only the termination of Father's and Mother's parental rights

On March 16, 2021, the agency received a referral after someone reported the family's school-aged children had poor attendance, and Father and Mother appeared to be under the influence of drugs during a home visit. An agency social worker subsequently made an unannounced home visit. The home was unkempt, there were two marijuana bongs within the children's reach and marijuana in a closet, and Father and Mother appeared to be co-sleeping with Jerry. Father and Mother refused to be drug tested and refused to allow the social worker to speak with the children. Thereafter, Father and Mother refused to cooperate with the agency's emergency response investigation, which included efforts to schedule a team decisionmaking meeting.

On March 29, 2021, the agency obtained the issuance of protective custody warrants for the seven children after Father's older son, An.R., and his mother reported that he moved out of the home and in with her months earlier due to Father's and Mother's methamphetamine use. Police and agency social workers went to the home, police forced entry after Mother refused to open the door, and the children were taken into protective custody. They were subsequently placed in a licensed foster care home.

On April 1, 2021, the agency filed a petition under section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling), based on Father's and Mother's substance abuse issues. The petition included Judicial Council Forms, form ICWA 010(A)[9] for each child, stating that Mother gave the agency reason to believe the children are or may be Indian children. In the detention report, the agency documented that ICWA may apply and that Mother stated she possibly has Cherokee and Navajo ancestry. Mother denied Father has any Indian ancestry.

---

to Joe, Gabriel, and Jerry, who are together in foster care with a permanent plan of adoption by their caregivers. Am.R., Ang.R., E.R., and Z.R. are together in a different foster care placement with a different permanent plan.

[9] All further references to forms are to Judicial Council forms.

Mother also filed ICWA-020 forms stating that she is or may be a member of, or eligible for membership in, the Cherokee and Navajo tribes. Father filed ICWA-020 forms denying any tribal membership or eligibility for tribal membership.

On April 8, 2021, after a continuance to allow Father and Mother to obtain counsel, the juvenile court held a detention hearing. The court appointed counsel for Father and Mother, and they denied the petition allegations. The court found that ICWA may apply, found a prima facie showing had been made that the children were persons described by section 300, and ordered the children detained from both parents and placed in the temporary custody of the agency.

On June 22 and 23, 2021, the court held a combined contested jurisdiction and disposition hearing. The court stated it was unknown if ICWA applied, sustained the petition allegations, and found the children were as described by section 300, subdivisions (b)(1) and (j). Pursuant to section 361, subdivision (c)(1), the court found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if they were returned home, and there were no reasonable means by which their physical health could be protected without removing them from their parents' physical custody. Both parents were bypassed for reunification services under section 361.5, subdivision (b)(13), based on their extensive, chronic abuse of drugs or alcohol and resistance to court-ordered treatment. The court scheduled a permanency planning review hearing under section 366.3 and ordered the agency to initiate a placement request through the Interstate Compact on the Placement of Children in the state of Arizona, where a paternal great-aunt lived.

On January 6, 2022, the court held a review hearing under section 366.3.

On May 9, 2022, after the agency received response letters from six Indian tribes to which it sent form ICWA-030 notices based on Mother's claim of possible Cherokee

6.

and Navajo ancestry, the court granted the agency's motion for an ICWA determination and made a finding that ICWA did not apply.

On July 1, 2022, the court held a review hearing under section 366.3. Joe, Gabriel, and Jerry were in a new foster care placement of several months and the court set a section 366.26 hearing to implement a plan of adoption by their caregivers.

On October 24, 2022, Mother filed a petition under section 388 seeking the court's orders be modified to family maintenance services or family reunification services for six months.

On February 28, 2023, the court held a contested hearing on Mother's section 388 petition and on selection and implementation under section 366.26. Following testimony by Father and Mother, the court denied Mother's section 388 petition, terminated Father's and Mother's parental rights, set a permanent plan of adoption for Joe, Gabriel, and Jerry, and set a postpermanency planning review hearing under section 366.3.

Father and Mother filed timely notices of appeal.

## DISCUSSION

### I. ICWA and Duty of Inquiry Under California Law

#### A. ICWA

ICWA was enacted in 1978 by Congress "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.' 92 Stat. 3069, 25 U.S.C. §1901(4). Congress found that many of these children were being 'placed in non-Indian foster and adoptive homes and institutions,' and that the States had contributed to the problem by 'fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.' §§1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children.' §1901(3)." (*Haaland v. Brackeen* (2023)

__ U.S. __, __ [143 S.Ct. 1609, *1623] (*Haaland*); accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)

"[ICWA] thus aims to keep Indian children connected to Indian families. 'Indian child' is defined broadly to include not only a child who is 'a member of an Indian tribe,' but also one who is 'eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' §1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. §1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. §1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is 'involuntary' (one to which the parents do not consent) or 'voluntary' (one to which they do)." (*Haaland, supra*, __ U.S. at p. __ [143 S.Ct. 1609, *1623]; accord, *Holyfield, supra*, 490 U.S. at p. 36.)[10]

"Involuntary proceedings are subject to especially stringent safeguards. See 25 CFR §23.104 (2022); 81 Fed. Reg. 38832–38836 (2016). Any party who initiates an 'involuntary proceeding' in state court to place an Indian child in foster care or terminate parental rights must 'notify the parent or Indian custodian and the Indian child's tribe.' §1912(a). The parent or custodian and tribe have the right to intervene in the proceedings; the right to request extra time to prepare for the proceedings; the right to 'examine all reports or other documents filed with the court'; and, for indigent parents or

---

[10]     In voluntary proceedings, "a biological parent who voluntarily gives up an Indian child cannot necessarily choose the child's foster or adoptive parents. The child's tribe has 'a right to intervene at any point in [a] proceeding' to place a child in foster care or terminate parental rights, as well as a right to collaterally attack the state court's decree. §§1911(c), 1914. As a result, the tribe can sometimes enforce ICWA's placement preferences against the wishes of one or both biological parents, even after the child is living with a new family." (*Haaland, supra*, __ U.S. at p. __ [143 S.Ct. 1609, *1624], citing *Holyfield, supra*, 490 U.S. at pp. 49–52).

custodians, the right to court-appointed counsel. §§1912(a), (b), (c). The party attempting to terminate parental rights or remove an Indian child from an unsafe environment must first 'satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.' §1912(d). Even then, the court cannot order a foster care placement unless it finds 'by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.' §1912(e). To terminate parental rights, the court must make the same finding 'beyond a reasonable doubt.' §1912(f)." (*Haaland, supra*, __ U.S. at pp. __ [143 S.Ct. 1609, *1623–1624].)

ICWA sets the minimum standards, providing, "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard." (25 U.S.C. § 1921; accord, § 224, subd. (d).) "The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.'" (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) "ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA." (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. § 1903(4).) "Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

To facilitate notice in appropriate cases, federal law provides, "State courts must ask each participant in an emergency or voluntary or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a) (2023).) California law requires more and, relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)

## B. Duty of Inquiry Under California Law

In 2006, "persistent noncompliance with ICWA led [our state] Legislature … to 'incorporate[] ICWA's requirements into California statutory law.'" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91, quoting *In re W.B.* (2012) 55 Cal.4th 30, 52 (*W.B.*).) "'In 2016, new federal regulations were adopted concerning ICWA compliance.'" (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*) [citing 81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019)].) Prior to that time, "neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency proceeding was an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*), citing *In re A.B.* (2008) 164 Cal.App.4th 832, 838 & *In re H.B.* (2008) 161 Cal.App.4th 115, 120.) "[F]ederal regulations governing ICWA … now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that 'may culminate' in foster care placement or termination of parental rights." (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11, citing 25 C.F.R. §§ 23.2(2), 23.107(a) (2022) & *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.)

10.

Subsequently, the California Legislature enacted Assembly Bill No. 3176,[11] effective January 1, 2019, which "'made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements.'" (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *D.S., supra*, 46 Cal.App.5th at p. 1048 [citing Assem. Bill 3176 & *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3].)  In relevant part, Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form.  (Stats. 2018, ch. 833, §§ 4–7.)  Section 224.3 now governs notice and section 224.2 inquiry.[12]

Now, as then, California law expressly recognizes "There is no resource that is more vital to the continued existence and integrity of Indian tribes than their children, and the State of California has an interest in protecting Indian children who are members or citizens of, or are eligible for membership or citizenship in, an Indian tribe.  The state is committed to protecting the essential tribal relations and best interest of an Indian child by promoting practices, in accordance with the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) and other applicable state and federal law, designed to prevent the child's involuntary out-of-home placement and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with

---

[11]  Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176 or Assem. Bill 3176).

[12]  Section 224.2 was subsequently amended by Assembly Bill No. 686 (2019–2020 Reg. Sess.), effective January 1, 2020; Assembly Bill No. 2944 (2019–2020 Reg. Sess.), effective September 18, 2020; and Assembly Bill No. 2960 (2021–2022 Reg. Sess.), effective January 1, 2023.  Those amendments did not affect subdivision (b) of section 224.2, however.

the child's tribe and tribal community." (§ 224, subd. (a)(1).)[13] Assembly Bill 3176 revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, "revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child." (Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

As this court summarized in *K.H.*, "'[n]otice to Indian tribes is central to effectuating ICWA's purpose ….' (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, [1 Cal.5th] at p. 8.) However, it is typically 'not self-evident whether a child is an Indian child' (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and 'the question of membership is determined by the tribes, not the courts or child protective agencies' (*T.G., supra*, at p. 294). To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a))" (*K.H., supra*, 84 Cal.App.5th at p. 588), and following the passage of Assembly Bill 3176, "agencies now have a broader duty of inquiry and a duty of documentation" (*K.H., supra*, at p. 588, fn. omitted, citing § 224.2, subd. (b) & rule 5.481(a)(5)).

## II. Broad Duty of Inquiry and Children Taken Into Protective Custody By Warrant

Father's and Mother's claim of prejudicial error by the juvenile court is premised on the agency's failure to discharge its broad duty of inquiry under section 224.2, subdivision (b), and to document its efforts as required under rule 5.481(a)(5). Relying on the Court of Appeal's decisions in *Robert F.* and *Ja.O.*, the agency takes the position that because Joe, Gabriel, and Jerry were taken into protective custody via a warrant under section 340, subdivision (b), rather than into temporary custody by a social worker

---

[13] Assembly Bill 3176 only effected minor technical changes to section 224, subdivision (a)(1).

without a warrant under section 306, subdivision (a)(2), the broad duty to inquire of extended family members and others under section 224.2, subdivision (b), expressly applicable to children in temporary custody under section 306, was not triggered. (*Robert F., supra*, 90 Cal.App.5th at pp. 500–501, review granted; accord, *Ja.O., supra*, 91 Cal.App.5th at pp. 679–680, review granted.)  Therefore, before considering Father's and Mother's claim of error, we must resolve whether section 224.2, subdivision (b), applies in this case.  We conclude it does because following execution of the warrant issued under section 340, the children were received and maintained in the temporary custody of a county social worker pursuant to section 306, subdivision (a)(1).

## A.      Legal Principles

"Issues of statutory construction are reviewed de novo." (*People v. Brown* (2023) 14 Cal.5th 530, 536.)  "'Our fundamental task is to determine the Legislature's intent to effectuate the law's purpose, giving the statutory language its plain and commonsense meaning.  We examine that language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and purpose and to harmonize the various parts of the enactment.  [Citation.]  "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  [Citation.]  The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language.'  (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1157–1158.) 'Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous[, however].'  (*People v. Tran* (2022) 13 Cal.5th 1169, 1220.)"  (*People v. Prudholme* (2023) 14 Cal.5th 961, 975–976); accord, *People v. Valencia* (2017) 3 Cal.5th 347, 357–358; *In re Ethan C.* (2012) 54 Cal.4th 610, 627.)

13.

## B.   Summary of Statutes

### 1.   Section 224, Subdivisions (a) and (b):  Duty of Initial Inquiry

Section 224.2, subdivision (a), provides that "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child.  The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."

At issue here, section 224.2, subdivision (b), specifically mandates a broad duty of inquiry as follows:  "*If a child is placed into the temporary custody of a county welfare department pursuant to Section 306* or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (Italics added.)

### 2.   Section 306, Subdivision (a):  Maintaining Temporary Custody of Child

As set forth above, section 224, subdivision (b), applies, by express terms, to children placed into temporary custody of the county welfare department under section 306, which provides, in turn:

> "(a)   Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following:

14.

"(1)    Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer.

"(2)    Take into and maintain temporary custody of, *without a warrant*, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.

"(b)    Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."  (§ 306, subds. (a)–(b), italics added.)

3.    **Section 340, Subdivisions (a) and (b):  Issuance of Protective Custody Warrant**

Where a child is at risk of harm necessitating removal but the risk falls short of the immediacy justifying warrantless government action, section 340 authorizes the issuance of a protective custody warrant, both where a section 300 petition has been filed and where a petition has not yet been filed but the issuing court finds probable cause that the child is a person described in section 300.  The statute provides:

"(a)    *Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300* and praying for a hearing on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement, a protective custody warrant may be issued immediately for the minor.

"(b)    A protective custody warrant may be issued *without filing a petition under Section 300* if the court finds probable cause to support all of the following:

"(1)    The child is a person described in Section 300.

"(2)     There is a substantial danger to the safety or to the physical or emotional health of the child.

"(3)     There are no reasonable means to protect the child's safety or physical health without removal."  (§ 340, subds. (a)–(b); italics added.)[14]

## C.     Analysis

### 1.     Statutory Language

We agree with *Delila D.* that, based on the plain language of the statutes, children taken into protective custody by warrant under section 340, subdivision (a) or (b), and delivered to a social worker under subdivision (c) of section 340, are received and maintained in the temporary custody of the social worker within the meaning of section 306, subdivision (a)(1).  (*Delila D., supra,* 93 Cal.App.5th at pp. 971–972.)  Therefore, these children fall within the ambit of section 224.2, subdivision (b), which expressly applies to children in temporary county custody under section 306.  As discussed below, this result is consistent both with California's statutory scheme governing dependency, and the federal and state statutory and rule-based schemes governing ICWA.  We consider the three reasons advanced in the concurring opinion in *Adrian L.*, followed by *Robert F.* and *Ja.O.*, for reaching a contrary result and conclude they do not withstand scrutiny.  (*Adrian L., supra,* 86 Cal.App.5th at p. 357 (conc. opn. of Kelley, J.);[15] *Robert F., supra,* 90 Cal.App.5th at pp. 500–501, review granted; *Ja.O., supra,* 91 Cal.App.5th at pp. 678–679, review granted.)

---

[14]     The provision codified in subdivision (b) was added to section 340, effective January 1, 2018, to expressly authorize the court to issue a protective custody warrant without the filing of a section 300 petition.  (Assembly Bill No. 1401 (2017–2018 Reg. Sess.) (Assembly Bill 1401 or Assem. Bill 1401).)  The bill was introduced to clarify a perceived ambiguity that led some courts to conclude they had inherent authority to issue a warrant to protect a child's interests without a petition being filed and other courts to conclude the code required a specific grant of authority.  (Assem. Com. on Judiciary, Rep. on Assem. Bill 1401, Apr. 18, 2017, pp. 1, 3.)

[15]     Los Angeles Superior Court Judge Kelley was sitting on assignment, and we use his title as it was during that period.

As *Delila D.* stated, "[s]ection 306 authorizes a department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant (§ 306, subd. (a)(1) & (2)) *and* when the child has been taken from home by means of a protective custody warrant issued under section 340 (§ 306, subd. (a)(1)). [¶] When a child is removed by warrant, the taking is authorized by section 340, and the holding or maintaining in custody is authorized by section 306, subdivision (a)(1). That is, section 340 provides that when a child is taken from home by means of a warrant, the child must be 'delivered to' the social worker. (§ 340, subd. (c) ['Any child taken into protective custody pursuant to this section shall immediately be delivered to the social worker who shall investigate, pursuant to Section 309, the facts and circumstances of the child and the facts surrounding the child being taken into custody and attempt to maintain the child with the child's family through the provision of services'].) Section 306, subdivision (a)(1), in turn, authorizes the social worker to 'receive' the child and 'maintain' them in temporary custody. (§ 306, subd. (a)(1).) [¶] When a child is removed without a warrant, the taking is authorized by section 306, subdivision (a)(2) (for social workers) and by either section 305 or 305.6 (for police officers). If a social worker takes a child without a warrant, section 306, subdivision (a)(2) authorizes the social worker to 'maintain' custody of the child. (See § 306, subd. (a)(2) [permitting the social worker to both '[t]ake into and maintain temporary custody of' a child the department removes from home without a warrant].) By contrast, if a police officer takes a child without a warrant, section 306, subdivision (a)(1) authorizes the social worker to '[r]eceive and maintain' the child upon delivery by the officer, pending the detention hearing. (§ 306, subd. (a)(1).)

"Regardless of whether a child is taken into custody by law enforcement and then delivered to the department, or is taken by the department directly, it is *the maintaining in custody* that triggers the need for a detention hearing. (See § 315 ['If a child has been

17.

taken into custody under this article and *not released to a parent or guardian*, the juvenile court shall hold a hearing (which shall be referred to as a "detention hearing") to determine whether the child shall be further detained' (italics added)].) Whether the initial taking involves law enforcement—and is thus termed 'protective custody'—does not alter the fact that the court is required to hold a detention hearing if the child is not going to be released to a parent or guardian. (See *In re Ethan C.* (2012) 54 Cal.4th 610, 625 ['If the child has been taken into temporary protective custody, and remains in custody at the time the dependency petition is filed (see § 305 et seq.), the court must promptly hold a detention hearing to determine whether he or she should be returned to the parent or guardian pending the jurisdictional/dispositional hearing'].)

"In this connection, we think it significant that section 224.2[, subdivision ](b) uses the phrase 'placed into temporary custody' not 'taken into temporary custody.' (§ 224.2[, subd. ](b).) In our view, this word choice indicates the Legislature intended to cover children initially taken into custody by a police officer (under §§ 305, 305.6, or 340) then delivered or *placed* into the department's temporary custody under section 306, subdivision (a)(1). There is no practical difference between children taken by warrant and those taken without a warrant, and so there is no reason to distinguish between them for ICWA inquiry purposes. If the department decides to retain custody, both categories of children require a detention hearing and are therefore at risk of an 'emergency removal.' (§ 319). [¶] And, because the department, not law enforcement, is charged with conducting the ICWA investigation in a dependency proceeding, it simply makes more sense that section 224.2[, subdivision ](b) would tie the initial inquiry to when the child is *delivered* to the department under section 306, subdivision (a)(1) and not when they are *initially taken* from home under section 340. We therefore conclude that section 224.2[, subdivision ](b)'s reference to temporary custody 'pursuant to [s]ection 306' is better read as including children who, though initially removed by protective

18.

custody warrant, are then delivered or placed into the department's custody pending a detention hearing." (*Delila D., supra*, 93 Cal.App.5th at pp. 971–973.)

## 2. Interpretation Comports With Statutory Scheme

Viewed through the lens of the statutory schemes, this result comports with legislative intent. "The goal of dependency proceedings, both trial and appellate, is to safeguard the welfare of California's children. 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.'" (*In re Josiah Z.* (2005) 36 Cal.4th 664, 673 (*Josiah Z.*), quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 (*Marilyn H.*); accord, *In re Celine R.* (2003) 31 Cal.4th 45, 52 (*Celine R.*); § 300.2, subd. (a).)[16] Within the dependency scheme, certain procedures are required to determine if a child subject to dependency proceedings is or may be an Indian child (§§ 224.2, 224.3; *Isaiah W., supra*, 1 Cal.5th at pp. 14–15; *W.B., supra*, 55 Cal.4th at p. 47; 25 C.F.R. § 23.103 (2023)), in furtherance of "federal policy '"that, where possible, an Indian child should remain in the Indian community ...."'" (*W.B.,* at p. 48; accord, *Haaland, supra*, __ U.S. at p. __ [143 S.Ct. 1609, *1623]; 28 U.S.C. §§ 1901–1902; Welf. & Inst. Code, § 224).

"Dependency provisions 'must be construed with reference to [the] whole system of dependency law, so that all parts may be harmonized.'" (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 844–845; accord, *In re Corrine W.* (2009) 45 Cal.4th 522, 529.) Under California's statutory scheme, where a child is a dependent of the court under

---

[16] Section 300.2, subdivision (a), provides, "[T]he purpose of the provisions of this chapter relating to dependent children is to is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child...."

section 300 or there is reasonable cause to believe the child is a person described under section 300, social workers and peace officers may take the child into temporary custody without a warrant when the child has an immediate need for medical care, is in immediate danger of physical or sexual abuse, or is in a physical environment that poses an immediate threat to the child's health or safety. (§§ 305, subds. (a)–(b), 305.6, subd. (a), 306, subd. (a)(2).) In those instances, the immediacy or imminency of the harm, or danger or threat of harm, to the child constitutes exigent circumstances justifying taking the child into temporary custody without a warrant. (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1473–1474 & fn. 11 (*Arce*); *M.L. v. Superior Court* (2009) 172 Cal.App.4th 520, 527 (*M.L.*); *Keates v. Koile* (2018) 883 F.3d 1228, 1237–1238; *Wallis v. Spencer* (2000) 202 F.3d 1126, 1138.) ICWA also has a provision recognizing the emergency removal of an Indian child "in order to prevent imminent physical damage or harm to the child." (25 U.S.C. § 1922.)

Where circumstances fall short of the exigency justifying a warrantless seizure, but either a section 300 petition has been filed and circumstances suggest the "home environment may endanger the health, person, or welfare of the minor" (§ 340, subd. (a)), or there is a substantial danger to the child's safety or physical or emotional health and no reasonable means to protect the child without removal (*id.*, subd. (b)), the court may issue a protective custody warrant under section 340. The child must then be delivered to a social worker, who shall investigate. (*Id.*, subd. (c).)

Consistent with the statutory scheme's purpose, these sections read together ensure that when a child is being harmed or is facing danger or threat of harm, authorities may intervene, with or without a warrant as circumstances dictate, to ensure the child's safety and protection. (§ 300.2; *Josiah Z., supra*, 36 Cal.4th at p. 673.) When this occurs, temporary custody of the child is vested in a county social worker (§ 306, subd. (a)), who has a duty to investigate the circumstances and facts underlying the taking of the child into custody (§ 309, subd. (a)).

As discussed, to facilitate the identification of children who are or may be Indian children, federal law mandates an inquiry at the commencement of an emergency proceeding or child custody proceeding. (25 C.F.R. § 23.107(a) (2023); see 25 U.S.C. § 1903(1) [defining child custody proceeding]; 25 C.F.R. § 23.2 (2023) [defining child custody proceeding and emergency proceeding].) In furtherance of ICWA's objectives and standards, California law imposes an affirmative and continuing duty to inquire on the court and county when a section 300 petition has been filed (§ 224.2, subd. (a)), a broad duty to inquire on the county when a child has been placed into the county's temporary custody under section 306 (§ 224.2, subd. (b)), and a duty on the juvenile court to inquire at the first appearance of each party (*id.*, subd. (c)). This inquiry facilitates the identification of children who are or may be Indian children, and, when properly undertaken, provides the evidentiary basis upon which the juvenile court may determine that ICWA does or does not apply. (*Id.*, subds. (e), (i)(2), 224.3; *K.H, supra*, 84 Cal.App.5th at pp. 608, 619.) "[R]emedial statutes are to be construed broadly to accomplish their purpose" (*K.H., supra*, at p. 602, citing *Pulliam v. HNL Automotive Inc.* (2022) 13 Cal.5th 127, 137; accord, *Delila D., supra*, 93 Cal.App.5th at p. 974), and the broad inquiry under section 224.2, subdivision (b), is integral to determining whether the child is or may be an Indian child so that ICWA's notice requirements may be effectuated when necessary and the juvenile court has sufficient information upon which to make the determination whether ICWA does or does not apply.

We are unable to discern any logic in treating children who are dependents of the juvenile court under section 300, subjects of a pending section 300 petition, or believed to be persons described in section 300 differently based on *how* they were placed into temporary county custody, procedurally. The language of sections 306 and 340 does not support that result, let alone mandate it, and it is inconsistent with the broader statutory scheme designed to protect children from harm and to authorize intervention by authorities in the form of temporary custody when necessary, with or without a warrant.

Moreover, treating these two groups of children differently based on whether the removal was warrantless or effected by warrant leads to the absurd consequence that the broad ICWA inquiry under section 224.2, subdivision (b), does not apply to a subset of children who are also the subjects of a section 300 petition or are persons described in section 300, based on nothing more than how they were initially taken into custody. (§ 340, subds. (a)–(b).) Such a result subverts California's statutory and rule-based scheme intended to advance the public policy goals underlying ICWA by ensuring that the information necessary to determine whether the proceeding involves or may involve an Indian child is gathered early and broadly so that the juvenile court may accurately determine whether further inquiry or notice is required, and, ultimately, whether ICWA does or does not apply. (§§ 224, 224.2; rules 5.480–5482; see 25 U.S.C. §§ 1901–1902, 1911–1912, 1921; *Haaland, supra*, __ U.S. at p. __ [143 S.Ct. 1609, *1623]; *Isaiah W., supra*, 1 Cal.5th at pp. 7–9.)

### 3. *Adrian L.*, *Robert F.*, and *Ja.O.*

The language of section 340, subdivisions (a) through (c), and section 306, subdivision (a)(1), is not ambiguous in our view and the foregoing interpretation harmonizes the sections and comports with the statutory schemes underlying California's dependency law and ICWA. In reaching a different conclusion, *Robert F.*, followed by *Ja.O.*, adopted the analysis set forth in the concurring opinion in *Adrian L.*, which took the position that the broad duty of inquiry under section 224.2, subdivision (b), is not triggered when children are taken into protective custody by warrant under section 340 because those children have not been "placed into [the agency's] temporary custody 'pursuant to section 306,'" a prerequisite to application of section 224.2, subdivision (b). (*Adrian L., supra*, 86 Cal.App.5th at p. 357 (conc. opn. of Kelley, J.); accord, *Robert F., supra*, 90 Cal.App.5th at p. 500, review granted; *Ja.O., supra*, 91 Cal.App.5th at p. 679, review granted.) After addressing the plain language of the statutes, the cases discuss to varying degree the legislative history and intent supporting their conclusion that

section 224.2, subdivision (b), does not extend to children not within temporary custody under section 306 or 307. That analytical path follows from the threshold conclusion that children taken into protective custody by warrant under section 340 do *not* fall under section 306. We disagree with that predicate, as follows.

### a. Conclusion Section 306 Does Not Apply to Children Taken Into Protective Custody Under Section 340

In concluding that children taken into protective custody under section 340 are not in temporary custody under section 306, the concurrence in *Adrian L.* opined that the agency in that case "acted under an entirely different procedure that authorizes the juvenile court to issue protective custody warrants—namely, the warrant procedure pursuant to section 340, subdivision (b)" (*Adrian L., supra*, 86 Cal.App.5th at p. 357 (conc. opn. of Kelley, J.), and that "[p]lacing a child into 'temporary custody of a county welfare department pursuant to [section] 306' is fundamentally different from taking a child into 'protective custody' under section 340" (*ibid.*; accord, *Robert F., supra*, 90 Cal.App.5th at pp. 500–501, review granted; see *Ja.O., supra*, 91 Cal.App.5th at pp. 679–680, review granted). The concurring opinion advanced three reasons in support of this conclusion, two of which are interrelated: "Beyond the obvious feature that one process requires a court order and the other does not, these provisions are found in entirely different articles of the juvenile law. The two provisions also have different standards that must be met to justify removal. Section 306 requires 'imminent physical damage or harm' before a child may be removed without a warrant (*id.*, subd. (c)), but section 340 does not have such a strict standard (*id.*, subds. (a), (b)). Under section 340, a court may issue a warrant without a prior filing of a section 300 petition where '[t]here is a substantial danger to the safety or to the physical *or emotional health* of the child.' (§ 340, subd. (b)(2), italics added.) It thus requires neither imminent nor physical harm." (*Adrian L., supra*, at p. 357, fn. omitted (conc. opn. of Kelley, J.).) This rationale is

echoed in *Robert F.* and *Ja.O.*, but, in our view, these analytical underpinnings are infirm. (*Robert F., supra*, at pp. 500–501; *Ja.O., supra*, at pp. 678–680.)

### 1) Article Numbers

First, in considering how sections 306 and 340 relate to one another, we discern no significance with the fact that section 306 falls under article 7, chapter 2, part 1, division 2 of the code while section 340 falls under article 8 of the same. Both statutes are part of chapter 2, juvenile court law, the purpose of which is to ensure the safety and protection of children who are at risk of harm. (§ 300.2, subd. (a); accord, § 202, subd. (a); *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 623 (*Michael G.*); *Josiah Z., supra*, 36 Cal.4th at p. 673.) Notably, section 6 of the code expressly undermines the rationale that article number is material here, providing, "Division, part, chapter, article, and section headings contained herein *shall not* be deemed to govern, limit, modify, or in any manner affect the scope, meaning, or intent of the provisions of any division, part, chapter, article, or section hereof." (§ 6, italics added; see *Stenger v. Anderson* (1967) 66 Cal.2d 970, 975, fn. 6 [observing that an appellate decision's reliance on where statute was chaptered in Welf. & Inst. Code appeared questionable given § 6]; see also *People v. Tufunga* (1999) 21 Cal.4th 935, 948 [rejecting argument that a particular defense was eliminated for crime of robbery following its reclassification to a different title (crime against person) than larceny (crime against property) in Pen. Code, § 10004, a parallel provision to Welf. & Inst. Code, § 6].)

Additionally, rather than addressing issues that are arguably wholly separate and independent of one another within the broader dependency scheme, the duties and procedures provided for in these two statutes pertain, by express terms, to children who are either dependents of the juvenile court under section 300 or persons described in section 300 and are being harmed or are at risk of harm, such that authorities are authorized to take them into custody. (§§ 306, subd. (a), 340, subds. (a)–(b).) Any distinction based on article number is further undermined by the fact that section 340,

subdivision (c), in article 8 directs that "Any child taken into protective custody pursuant to this section shall immediately be delivered to the social worker who shall" commence investigation under section 309, which, like section 306, is in article 7.  In short, nothing about section 306 or section 340 suggests the location of the sections in different articles has any bearing on the matter, and section 6 expressly provides otherwise.

### 2) Warrantless Removal Versus Removal By Warrant

Second, rather than some fundamental difference between the two statutes that would support reading section 306 to exclude children initially taken into protective custody by warrant under section 340, both sections, as discussed, address removal of children by authorities where harm, or danger or threat of harm, sufficient to justify intervention exists.  The distinctions between requiring a court order and not, and the different standards applicable to each, follow directly from the fact that the warrantless removal of a child is subject to a more stringent standard due to constitutional limitations. (*Arce, supra*, 211 Cal.App.4th at pp. 1473–1474 & fn. 11; accord, *M.L., supra*, 172 Cal.App.4th at p. 527.)

As stated, California's dependency "law balances a number of vital interests: children's interests in safe and stable homes; parents' interests in raising their children; families' shared interests in each other's companionship; and the state's interest in protecting society's most vulnerable members." (*Michael G., supra*, 14 Cal.5th at pp. 623–624; accord, *Marilyn H., supra*, 5 Cal.4th at pp. 306–307.)  "Social workers constitutionally may remove a child from the custody of a parent without prior judicial authorization *if* the information they possess at the time of seizure provides reasonable cause to believe that the child is in *imminent* danger" (*M.L., supra*, 172 Cal.App.4th at p. 527, italics added), and the constitutional limitations on warrantless seizures "are effectively codified in … section 306, subdivision (a)(2)" (*Arce, supra*, 211 Cal.App.4th at p. 1474, fn. 11).  Thus, while sections 306 and 340 both pertain to removal in situations of harm, or danger or threat of harm, they differ in that one authorizes warrantless

25.

removal when exigent circumstances exist, based on the immediacy of the danger, and the other authorizes the issuance of a warrant where the danger is substantial but falls short of the exigency justifying warrantless removal.

These distinctions reflect the balance between government's interest in protecting children from harm or threat of harm and the relevant constitutional protections afforded parents and children to be free from government interference. (*Keates v. Koile, supra*, 883 F.3d at pp. 1237–1238 [parents and children's right to familial association under 14th, 1st and 4th Amend. violated by warrantless seizure of children absent exigent circumstances]; *Wallis v. Spencer, supra*, 202 F.3d at pp. 1137, fn. 8 [right of family association protected by 14th Amend. and 4th Amend. right to be free from warrantless search and seizure]; accord, *Arce, supra*, 211 Cal.App.4th at pp. 1473–1474.) In either circumstance, however, the child ends up in the temporary custody of a social worker (§§ 306, subd. (a), 340, subd. (c); see § 309, subd. (a)), triggering the duty of broad inquiry into whether the child is or may be an Indian child (§ 224.2, subd. (b)), and we see no basis for casting them as fundamentally different.

*Ja.O.* acknowledges the constitutional limitations underpinning warrantless removals, but does not explain how that distinction supports the position taken. (*Ja.O, supra*, 91 Cal.App.5th at pp. 678–679, review granted.) In our view, the three justifications advanced in the concurring opinion in *Adrian L.*, and relied on in *Robert F.* and *Ja.O.*, to read section 306 as excluding children taken into protective custody under section 340 lack force. Instead, by express terms, a child taken into protective custody by warrant under section 340, which requires the child come within or be a person described in section 300, must "immediately be delivered" to a social worker, who shall then commence investigation. (§ 340, subd. (c).) In turn, again by express terms, section 306, subdivision (a)(1), authorizes a social worker to "Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer." The fact that the two statutes are in different articles

of the same chapter and the procedural mechanism by which the government is authorized to take the child into custody differs—immediate danger justifying warrantless removal versus substantial danger justifying removal by warrant—does not support the conclusion that a child taken into protective custody by warrant does not come within section 306, subdivision (a)(1).

### b. Section 340, Subdivision (c), Not Rendered a Surplusage

In *Ja.O.*, the mother advanced the interpretation we adopt here, but the appellate court disagreed, stating that if that interpretation were correct, "then most of subdivision (c) of section 340 would be surplusage.… [T]hat provision requires the social worker to conduct an investigation pursuant to section 309 when a child has been delivered to the social worker. (§ 340, subd. (c).) Section 309 is in Article 7 and describes the investigation that the worker must conduct when a child 'has been taken into temporary custody under this article.' (§ 309, subd. (a).) If subdivision (a)(1) of section 306 referred to a child taken into protective custody under section 340, then there would be no need to specify that the social worker conduct a section 309 investigation. Section 309 would already apply, because the child would have been taken into temporary custody under Article 7." (*Ja.O., supra*, 91 Cal.App.5th at p. 680, review granted; accord, *Delila D., supra*, 93 Cal.App.5th at pp. 979–980 (dis. opn. of Miller, J.).) We disagree.

As stated in footnote 14 *ante*, subdivision (b) of section 340 was added to address a perceived gap in the law where a protective custody warrant was sought but a section 300 petition had not yet been filed. (Assem. Com. on Judiciary, Rep. on Assem. Bill 1401, Apr. 18, 2017, pp. 1, 3; Assem. Com. on Juduciary, Concurrence in Sen. Amends to Assem. Bill 1401, as amended Aug. 23, 2017, pp. 1, 3.) Subdivision (c) of section 340 was added to clarify the next step to be taken. (Assem. Com. on Judiciary, Rep. on Assem. Bill 1401, Apr. 18, 2017, pp. 1, 3; Assem. Com. on Juduciary, Concurrence in Sen. Amends to Assem. Bill 1401, as amended Aug. 23, 2017, pp. 1, 3.)

27.

The bill's author explained the addition would "clarify that a child taken into protective custody pursuant to a warrant—with or without a juvenile court petition being filed—will immediately be taken to a social worker for assessment of his or her needs and his or her ability to return home, pursuant to an existing statutory framework: [Welfare and Institutions Code] Section 309." (Assem. Com. on Judiciary, Rep. on Assem. Bill 1401, Apr. 18, 2017, p. 1, italics omitted.)

These statutory sections are not mutually exclusive of one another and are not in conflict. As *Ja.O.* recognizes, subdivision (c) of section 340 directs that a child taken into protective custody under the section be delivered to a social worker, who shall then investigate under section 309. (*Ja.O., supra*, 91 Cal.App.5th at p. 680, review granted.) Section 309 sets forth steps governing investigation and specifically describes a child delivered to a social worker as having been taken into temporary custody under this article (article 7). (§ 309, subd. (a).) We see no reasonable basis for concluding such a child is *not* as described under section 306, subdivision (a)(1): in the temporary custody of a social worker pending investigation. In this context, these sections—removals with and without a warrant, duties of social workers, and investigatory steps to be taken— work together in service of the broader statutory scheme intended to "'protect abused or neglected children and those at substantial risk thereof .…'" (*Celine R., supra*, 31 Cal.4th at p. 52, quoting *Marilyn H., supra*, 5 Cal.4th at p. 307; § 300.2, subd. (a).)

###          c.          Emergency Removal Under Title 25 United States Code Section 1922 and Welfare and Institutions Code Section 306, Subdivision (c)

Of final note, in justifying its reading of section 306 to exclude children taken into protective custody under section 340, *Robert F.*, relying on the concurrence in *Adrian L.*, points out that removal under section 340 is not an "'"emergency removal,"'" in contrast with removal under section 306. (*Robert F., supra*, 90 Cal.App.5th at p. 503, review granted, citing *Adrian L., supra*, 86 Cal.App.5th at pp. 363–364 (conc. opn. of Kelley,

J.).) The court observed, "[U]nder federal law, emergency removal situations are cases in which the child is facing imminent physical harm and may be removed without prior court authorization" (*Robert F., supra*, at p. 503, citing Bureau of Indian Affairs guidelines at pp. 23–24, *Adrian L., supra*, at pp. 362–363 (conc. opn. of Kelley, J.), & 25 U.S.C. § 1922)), and "[t]he [Bureau of Indian Affairs] guidelines thus describe the same type of emergency situation that must exist for a social worker to take a child into temporary custody under section 306" (*Robert F., supra*, at p. 503, citing *Adrian L., supra*, at p. 363 (conc. opn. of Kelley, J.)). However, "[t]he standard for issuance of a protective custody warrant under section 340 is lower, and such a removal 'would not be an "emergency removal" under federal law.'" (*Robert F., supra*, at p. 503, quoting *Adrian L., supra*, at pp. 363–364 (conc. opn. of Kelley, J.).) Thus, "[o]ur Legislature recognized that distinction: Section 306 declares that removal of an Indian child under that section '"shall be considered an emergency removal under" federal law,' but section 340 contains no reference to emergency removals." (*Robert F., supra*, at p. 503, quoting *Adrian L., supra*, at p. 364 (conc. opn. of Kelley, J.); accord, *Delila D., supra*, 93 Cal.App.5th at pp. 978–979 (dis. opn. of Miller, J.).)

The foregoing from *Adrian L.* was set forth in the context of explaining why section 224.2, subdivision (b), should not be read as including children placed into protective custody under section 340, after the concurring justice had already concluded that those children did not fall within the purview of section 306, subdivision (a). We disagree with that conclusion and, therefore, do not follow our colleagues down a path of analyzing whether children who do not fall within the purview of section 306 nevertheless fall within the purview of section 224.2, subdivision (b). However, responsive to this attempt to distinguish sections 306 and 340 based on emergency removal language, we first reiterate that ICWA sets *minimum* federal standards (*Isaiah W., supra*, 1 Cal.5th at pp. 7–8), and under state law, "In *any* case in which this code or other applicable state or federal law provides a higher standard of protection to

29.

the rights of the parent or Indian custodian of an Indian child, or the Indian child's tribe, than the rights provided under the federal Indian Child Welfare Act of 1978, the court *shall* apply the higher standard." (§ 224, subd. (d), italics added; accord, *Delila D., supra*, 93 Cal.App.5th at p. 974.) Therefore, California law may, and does, expand on minimum ICWA requirements under federal law. (E.g., § 224.2, subd. (b).)

Second, and critically, an attempt to distinguish warrantless removals under section 306, subdivision (a), from removals by warrant under section 340, subdivision (a) or (b), through reliance on the presence or absence of the term "emergency removal" in section 306 misses the mark. This is because *neither* section 306, subdivision (a), *nor* section 340 refers to "emergency removal." As such, there is no inconsistent language between those subdivisions that might arguably counsel against reading section 306, subdivision (a)(1), to include children taken into protective custody under section 340, subdivision (a) or (b).

Rather, it is subdivision (c) of section 306 that provides, "*If it is known or if there is reason to know the child is an Indian child*, any county social worker in a county welfare department may take into custody, and maintain temporary custody of, without a warrant, the Indian child if removing the child from the physical custody of his or her parent, parents, or Indian custodian is necessary to prevent imminent physical damage or harm to the Indian child. *The temporary custody shall be considered an emergency removal* under Section 1922 of the federal Indian Child Welfare Act (25 U.S.C. Sec. 1922)." (Italics added.)[17] Read in context, the fact that Welfare and Institutions Code section 306, subdivision (c), parallels title 25 United States Code section 1922 with respect to an emergency removal under ICWA when it is known or there is reason to

---

[17] Title 25 United States Code section 1922 provides, "Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child.…"

know the child is an Indian child, while section 340 does not refer to emergency removal, is no discernible consequence to the determination that children placed into protective custody by warrant under section 340, subdivision (a) or (b), are received and maintained in the temporary custody of a social worker under section 306, subdivision (a)(1).[18]

### 4. Conclusion

The issue presented here is now pending resolution by the California Supreme Court, but until such time as we receive further guidance, we concur with *Delila D.*'s well-reasoned conclusion that section 224.2, subdivision (b), applies to children who are taken into protective custody by warrant under section 340, subdivision (a) or (b), and delivered to a social worker under section 340, subdivision (c), because the social worker receives and maintains temporary custody of the child, pending investigation, pursuant to section 306, subdivision (a)(1). (*Delila D., supra*, 93 Cal.App.5th at p. 972.) This conclusion follows from the plain, unambiguous language of sections 224.2, subdivision (b), 306, subdivision (a)(1), and 340, subdivisions (a) and (b). Absent ambiguity, this generally ends the inquiry unless absurd consequences result. (*People v. Prudholme, supra*, 14 Cal.5th at p. 976; accord, *In re Ethan C., supra*, 54 Cal.4th at p. 627.) Rather than resulting in absurd consequences, the conclusion we reach comports with California's dependency scheme and ICWA, and it harmonizes the statutory sections and rules 5.480(4) and 5.481(a)(1), which expressly require a broad inquiry into whether a child is or may be an Indian child in *all* proceedings under section 300. In our view, the contrary conclusion reached in *Robert F.* and *Ja.O.* is not supported by the plain language

---

[18] We decline to follow *Delila D.* to the extent it reasons that an "emergency *removal*" is limited to a court's detention order and is not broad enough under federal or state law to encompass a social worker removing a child who is or may be an Indian child under exigent circumstances. (*Delila D., supra*, 93 Cal.App.5th at p. 973, italics added, citing 25 C.F.R. § 23.2 (2023) ["Emergency proceeding means and includes any court action that involves an emergency removal or emergency placement of an Indian child."] and Welf. & Inst. Code, § 315 [detention hearing].) Federal and state law indicate otherwise. (25 U.S.C. § 1922; Welf. & Inst. Code, § 306, subd. (c).)

of the statutes, and the result reached there subverts legislative intent and policy goals underlying California dependency law and ICWA.

Notice to tribes lies at the remedial heart of ICWA and related California law, and for the purpose of the broad initial inquiry mandated by section 224.2, subdivision (b), we are unable to discern *any* logical basis for distinguishing between children who are the subject of a section 300 petition or are described in section 300 and are in the temporary custody of the county, based on the procedural mechanism by which the child was placed into temporary custody. For purposes of applying section 224.2, subdivision (b), the child may be taken into temporary custody by a social worker without a warrant due to exigent circumstances (§ 306, subd. (a)(2)), received into temporary custody by a social worker after being taken into temporary custody by a peace officer without a warrant due to exigent circumstances (§§ 305, 305.6, 306, subd. (a)(1)), or received into temporary custody by a social worker after being taken into protective custody by warrant because the harm or risk of harm fell short of the exigency required to justify a warrantless removal (§§ 340, subds. (a)–(b), 306, subd. (a)(1)). (*Delila D., supra*, 93 Cal.App.5th at pp. 971–972.) Whether initially taken into custody by social worker or peace officer, with or without a warrant, temporary custody of the child is with the county welfare department, triggering the need to inquire whether the child is an Indian child under section 224.2 (§ 306, subd. (b)), and the duty to investigate (§ 309, subd. (a)).

## III. Father's and Mother's ICWA Claim

Having concluded that section 224.2, subdivision (b), applies in this case because the children were in the temporary custody of the county welfare department under section 306, subdivision (a)(1), we turn to Father's and Mother's claim of error. For the reasons that follow, we conclude the agency failed to conduct a proper, adequate, and duly diligent inquiry and, therefore, the juvenile court erred in finding ICWA did not apply. (§ 224.2, subds. (b), (i)(2).) We also conclude that the error is prejudicial, necessitating a limited remand.

### A. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.'" (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142; *Adoption of M.R* (2002) 84 Cal.App.5th 537, 542; rule 5.482(c).) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…'" (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).)

The juvenile court's finding on the second element "requires the … court to 'engage in a delicate balancing of' various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence." (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra*, at p. 589; accord, *E.C., supra*, at p. 143; *In re Ezequiel G., supra*, at p. 1003.)

### B. Error

Father claims the court's finding that ICWA does not apply is not supported by substantial evidence of due diligence because there was no documented inquiry of extended paternal and maternal family members, despite the agency identifying 48 relatives and possessing addresses for 44 of them. (§ 224.2, subd. (i)(2); rules 5.481(a)(5), 5.482(c).) Mother joins in this claim.

In main, the agency defends the investigation on the ground that the duty to inquire of extended family members under section 224.2, subdivision (b), does not apply because the children were not removed under section 306, a position we found unmeritorious. The agency also points out that this is the third dependency proceeding involving Father and Mother, and ICWA was found inapplicable in 2019; and that the inquiry was extensive as to Mother, with the agency "obtain[ing] copious family history and verif[ying] familial relationships with a maternal aunt." On this record, these arguments are unavailing.

The law does not require the court or the agency "'to cast about' for investigative leads" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323), but as we explained in *K.H.*, "the law demands more than merely inquiring of [the parents]" (*K.H., supra*, 84 Cal.App.5th at p. 620). Although complying with the duty of inquiry and documentation under ICWA is unlikely to "prove onerous" in most cases (*ibid.*), in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H., supra*, at p. 620; see § 224.2; rules 5.480–5.482). There may be cases in which there is no one else to ask beyond the parents, but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, "the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)

In this case, there is no indication in the record that in the previous dependency proceedings, the agency conducted a proper, adequate, and duly diligent inquiry within the meaning of section 224.2, subdivision (b). We recognized in *K.H.* that, "as the recent surge of cases reflects, following changes to California law over the past few years, the agency's discharge of its duties to inquire and document under section 224.2, subdivision (b), and rule 5.481(a)(5), is often so lacking that the juvenile court is left with

little or nothing to work with; there is no evidence in the record and, therefore, nothing upon which to base a sound exercise of discretion." (*K.H., supra*, 84 Cal.App.5th at p. 605; accord, *E.C., supra*, 85 Cal.App.5th at p. 156.) Notably, the earlier finding the agency refers to here predates the amendment to rule 5.481(a)(5) requiring documentation, which was effective January 1, 2020 (*K.H., supra*, at p. 599), and the many appellate decisions that have more recently shaped this area of the law (*id.* at pp 611–618 [discussing development of various approaches in cases decided in 2021 and 2022]). Therefore, the bare assertion that there was a previous finding that ICWA did not apply is insufficient to permit deference to the finding.

On the children's paternal side, there is no indication the agency asked anyone other than Father and Mother about possible Indian ancestry. This is patently insufficient. (*K.H., supra*, 84 Cal.App.5th at p. 605.)

On the children's maternal side, we are also unable to determine from the record whether any ICWA inquiries were made of anyone other than Mother. The record citation provided by the agency in support of its contention that it conducted an extensive inquiry reflects maternal great-aunt "helped and confirmed relatives," which underscores how simple compliance with the law would likely have been. However, it does not reflect that she or anyone other than Mother was actually asked about possible Indian ancestry.

We recognize that the agency sent notice to some tribes, based on Mother's representation that she is or may be a member of, or eligible for membership in, the Cherokee and Navajo tribes. Because there is no indication that the agency inquired of any maternal relatives, it is impossible to determine whether Mother provided accurate information or not. It may be that maternal relatives possess no more information than that provided by Mother. It is also possible they possess information indicating that there is no membership or eligibility for membership in any federally recognized tribe, or, conversely, that there is further information but it involves tribes other than those noticed.

35.

We cannot know because there is no record of a documented inquiry adequate to satisfy section 224.2, subdivision (b), and rule 5.481(a)(5).  (*K.H., supra*, 84 Cal.App.5th at p. 605.)

### C.    Prejudice

Father and Mother are entitled to a conditional reversal of the juvenile court's ICWA finding only if the error complained of is prejudicial.  As we explained in *K.H.*, under California law, "'[n]o judgment shall be set aside … for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'  (Cal. Const., art. VI, § 13.)"  (*K.H., supra*, 84 Cal.App.5th at p. 606; accord, *E.C., supra*, 85 Cal.App.5th at p. 151.)  "California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error' (*In re Celine R.* (2003) 31 Cal.4th 45, 60, citing [*People v.*] *Watson* [1956] 46 Cal.2d [818,] 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073 (*Christopher L.*); [*In re*] *A.R.* [(2021)] 11 Cal.5th [234,] 252)."  (*K.H., supra*, at p. 607; accord, *E.C.*, *supra*, at p. 152.)

Courts "*generally* apply a *Watson* likelihood-of-success test to assess prejudice, [but] a merits-based outcome-focused test is not *always* appropriate because it cannot always adequately measure the relevant harm."  (*K.H., supr*a, 84 Cal.App.5th at p. 609, citing *In re A.R.* (2021) 11 Cal.5th 234, 252–253 (*A.R.*); accord, E.*C. supra*, 85 Cal.App.5th at pp. 153–154.)  "[W]here the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect."  (*K.H., supra*, at p. 609, citing *A.R., supra*, at p. 252; accord, *E.C., supra*, at p. 154.)

"'ICWA compliance presents a unique situation'" (*K.H., supr*a, 84 Cal.App.5th at p. 608, quoting *In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *E.C., supra*, 85

36.

Cal.App.5th at p. 152), because "ICWA is not directed at reaching, or protecting, a specific outcome on the merits" (*K.H., supra*, at p. 609; accord, *E.C., supra*, at p. 154). Rather, "'[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' ([*In re*] *N.G.* [(2018) 27 Cal.App.5th 474,] 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H., supra*, at p. 608; accord, *E.C., supra*, at pp. 152–153.) Here, the appealing parties are the parents and they do not bear the burden of complying with ICWA requirements. (Rule 5.481(a); see *K.H., supra*, at p. 608; *E.C., supra*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe. (*K.H., supra*, at p. 596; accord, *E.C., supra*, at pp. 139–140.)

As we recognized in *K.H.*, "the duty of inquiry is a continuing one (§ 224.2, subd. (a)[; rule 5.481(a)], … [but] if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H., supra*, 84 Cal.App.5th at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) "The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the [lower] court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply." (*K.H., supra*, at p. 591; accord, E.*C., supra*, at p. 154.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H., supra*, at p. 610, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, at p. 155.)

In this case, so far as we can tell from the record, the inquiry extended no further than Father and Mother, but there are numerous paternal and maternal relatives available to ask, through written communication at a minimum. Under these circumstances, an inquiry limited only to Father and Mother "fell … short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required." (*K.H., supra*, 84 Cal.App.5th at p. 620, citing *A.R., supra*, 11 Cal.5th at pp. 252–253; accord, *E.C., supra*, 85 Cal.App.5th at p. 156.) "A finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.'" (*E.C., supra*, at p. 155, quoting *K.H., supra,* at p. 611.)

Children have a critical interest in stability and permanency, which is undermined by unnecessary delay (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1081; *A.R., supra*, 11 Cal.5th at p. 249), and we recognize that courts and social services agencies are laboring under a tremendous burden (*K.H., supra*, 84 Cal.App.5th at p. 619). For all involved, the most efficient and "least burdensome option is simply to ensure that an adequate initial inquiry is made .…" (*Ibid.*) We also reiterate that our decisions in *K.H.* and *E.C.* should not be interpreted as requiring the juvenile court to ensure "an exhaustive search for and questioning of every living relative of [Joe, Gabriel, and Jerry]." (*K.H., supra*, at p. 621; accord, *E.C., supra*, 85 Cal.5th at p. 157.) "So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding." (*K.H., supra*, at p. 621, citing § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 157; rule 5.482(c).)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court for the limited purpose of ensuring compliance

with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481. If, after determining that an adequate inquiry was made, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.


                                                    MEEHAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DeSANTOS, J.